No. 24-30802
## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## TINA MARQUARDT
## PLAINTIFFS – APPELLANT/CROSS-APPELLEE
v.
## CITY OF NEW ORLEANS
## DEFENDANT – APPELLEE/CROSS-APPELLANT

_____

## ON APPEAL FROM
United States District Court for the Eastern District of Louisiana
USDC No. 2:19-CV-13773
USDC No. 2:23-CV-5000

_____

## BRIEF OF APPELLANTS
Tina Marquardt

_____

Submitted by:

Edward R. Washington, III
Counsel for Appellants
7130 E. Renaissance Court
New Orleans, Louisiana 70128

i

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**APPELLEES:**

Donesia Turner, City Attorney's Office, New Orleans

Corwin St. Raymond, City Attorney's Office, New Orleans

Sherri Hutton, City Attorney's Office, New Orleans

**APPELLANTS:**

Edward R. Washington, III, Counsel for Appellant

Tina Marquardt

> **/s/ Edward R. Washington, III**
> **Counsel for Appellant**

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument to assist the Court's decision of this matter.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . ... . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . .. . . . . . ..... . ii

TABLE OF CONTENTS........................................................................1

TABLE OF AUTHORITIES............................................................3

JURISDICTIONAL STATEMENT........................................................5

STATEMENT OF THE ISSUES..............................................................6
    ISSUE ONE.........................................................................6

STATEMENT OF THE CASE ...............................................................8
    A. Introduction....................................................................8
    B. Procedural History of This Litigation......................................10

SUMMARY OF THE ARGUMENT......................................................12
    A.    Introduction..............................................................12
    B.    Once a property obtains legal nonconforming use status, it virtually
          last indefinitely................................................................14
    C.    The City's Comprehensive Zoning Code (CZO) has never limited
          legal nonconforming use to the expressed term of the permit ...........15

ARGUMENT.................................................................................18
    I.    STANDARD OF REVIEW...............................................18
    II.    MOTION TO DISMISS STANDARD...............................18
    III.    BACKGROUND.........................................................19
    IV.    The District Court's Conclusion That The CZO Limited
          Marquardt's Legal Nonconforming Use For Short Term Rental
          To The Expressed Term Of Her Permit Was In Error As A Matter
          Of Law……………………………………………………..…….19
    V.    The City Of New Orleans Comprehensive Zoning Code (CZO) Only
          Provides That A legal nonconforming use "Continues" Not That It
          Continues Only For The Express Term Of The Permit………......…...20
    VI.    The CZO's definition of legal nonconforming use does not limit its
          duration to the express term of a permit……………………………21
    VII.    Under Louisiana And Federal Caselaw, A Legal Nonconforming

   Use Of Property Is Not Lost By The Expiration Of The Express
   Term Of The Permit…………………………..…………………………….22

VIII. The District Court's Application Of Redfearn V. Creppel's "viewed
   narrowly" Language Was A Misapplication Of The Law…………..25

IX. The Loss Of Legal Nonconforming Use By Expiration Of The
   Express Term Of The Permit Violates The Louisiana State
   Constitution………………………………………………………………28

X. Upon A Determination That Marquardt's Property Was A Legal
   Nonconforming Use, Marquardt Was Entitled To The Grant Of
   Permits For The Purpose Of Continuing In Her Short Term Rental
   For Legal Nonconforming………………………………………………..29

XI. Restricting Legal Nonconforming Use To The Express Term Of The
   Permit Would Render Legal Nonconforming Use Obtained Pursuant
   To Louisiana Revised Statute 9:5625 Meaningless………………....31

CONCLUSION………………………………………………………………...33

CERTIFICATE OF SERVICE . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . . . 36

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . ..... . . . . . . . . . . . . . . 37

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 247 (1986)…………………………18

*C. F. Lytle Co. v. Clark*, 491 F.2d 834, 837 (10th Cir. 1974)…………………14, 23

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)……………………….………18

*City of Lafayette v. Black*, 336 So.2d 982 (La.App. 3rd Cir.1976), writ den. 339 So.2d 850 (La.1976)…………………………………………………………..23

*City of Lake Charles v. Frank*, 350 So.2d 233, 235 (La.App. 3rd Cir.1977)……...28

*City of New Orleans v. Cantelli*, 136 So.2d 838 (La.App. 4th Cir.1962)………..…23

*City of New Orleans v. Elms*, 566 So.2d 626, 630 (La.1990)…………………..23, 24

*City of New Orleans v. Hamilton*, 602 So.2d 112, 115 (La. App. 4 Cir., 1992)……………………………….……………………………………………16, 23

*Derbes v. City of New Orleans*, 941 So.2d 45 (La. App. 2006)……………...17, 31

*Fuller v. City of New Orleans*, 311 So.2d 466 (La.App. 4th Cir.1975)…………...28

*Gauthier v. Village of Larchmont*, 30 A.D.2d 303, 291 N.Y.S.2d 584, 586 (1968)…………………………………………………………………...……………28

*Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013)…………………………18

*Hignell v. City of New Orleans,* 22-2991, 23-5000, Civil Action 19-13773 (E.D. La. Feb 27, 2024)…………………………………………………………...20

*League to Save Lake Tahoe v. Crystal Enterprises*, 685 F.2d 1142, 1146 (9th Cir. 1982)……………………………………………………………12, 23

*Lindsey v. Sears Roebuck & Co*., 16 F.3d 616, 618 (5th Cir. 1994)………………...18

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)……………………………………………………………....18

*Panzeca v. City of New Orleans*, 580 So.2d 489, 493 (La. App. 1991)……...…….30

*Parish of Jefferson v. H4TH & B, Inc.*, 155 So.3d 567, 570-571 (La. App. 2013)……………………………………………………….……….30, 32

*Redfearn v. Creppel*, 455 So.2d 1356, 1358-1359 (La., 1984)……………....15, 26

*Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994)………….……………...18

*Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004)….19

*State ex rel. Dema Realty Co. v. Jacoby*, 123 So. 314, 168 La. 752 (La. 1929)..…23

*State ex rel. Dema Realty Co. v. McDonald*, 121 So. 613, 168 La. 172 (La. 1929)……………………………………………………………………23

*Texas v. Rettig*, 987 F.3d 518, 526 (5th Cir. 2021)…………...…………………19

*Vieux Carre Prop. Owners v. City of New Orleans*, 216 So.3d 873 (La. App. 2015)……………………………………………………………30

*Villavicencio v. Alcoholic Beverage Control Bd.*, 543 So.2d 575, 577 (La. App. 1989)……………………………………………..……….25, 30

101 C.J.S. Zoning Sec. 181………………………………………..28

6 Powell on Real Property P 871(3)(f)(i)…………………………..……14, 23

## STATE STATUTES AND CITY ORDINANCES

Louisiana Revised Statute 9:5625…………………….……..15, 16, 30, 31, 32, 33, 34
Comprehensive Zoning Code § 25.2.C……………………..……..13, 15, 20, 21, 27
Comprehensive Zoning Code, Article 26, Definitions……………..…………21, 22
Code of the City of New Orleans, §10-123……………………….……………33
Ordinance No. 29381 M.C.S……………………………………..……..6
Ordinance No. 29382 M.C.S…………………………………………………6
Ordinance No. 29398 M.C.S…………………………………………………6

## JURISDICTIONAL STATEMENT

This Court has jurisdiction in this appeal under 28 U.S.C. 1291 because the District Court issued a final judgment on November 25, 2024,[1] and Appellants timely noticed their appeal on December 23, 2024.[2]

---

[1] ROA.4014.
[2] ROA.4015-4016.

## STATEMENT OF THE ISSUES

### ISSUE ONE

In 2023, the City Code and the Zoning Code (hereinafter "the 2023 ordinances") were amended to make the zoning classification for short term rentals more restrictive by reducing the number of short term rental uses allowed from unlimited to one per square block.[3] Pursuant to a lottery provided for in the 2023 ordinances, another property was awarded the one short term rental use per block to the exclusion of Marquardt's short term rental.

However, the City of New Orleans Comprehensive Zoning Ordinance hereinafter ("CZO or "Zoning Code") provided that any use that was made nonconforming because of a subsequent amendment of the Zoning Code would be allowed to continue as a legal nonconforming use. The continuing use would still be subject to the provisions of the Zoning Code, and the use would still have to comply with the general law concerning nuisance and life safety codes.

The sole issue of this appeal is a legal issue. The District Court's added language to the Zoning Code which provided that the legal nonconforming use was lost upon the "expiration date of the express term of her permit. Marquardt maintains, that as a matter of law, her short term rental legal nonconforming use was

---

[3] *See* ROA.2514 (Ordinance No. 29381 M.C.S.); ROA.2490 (Ordinance No. 29382 M.C.S.); and ROA.3235 (Ordinance No. 29398 M.C.S.)

not lost upon the expiration of the express term of her permit as the Zoning Code, no case, or no law provides for the loss of legal nonconforming use in that manner.

In all other respects, Marquardt takes no issue with the February 27, 2024 Order of the District Court.

## STATEMENT OF THE CASE

### A. Introduction

Tina Marquardt ("Marquardt") is the owner of two separate and detached dwelling units on one lot of record. Her primary residence is a single-family dwelling. Her second dwelling unit is a garage with an apartment situated above the garage on a second floor of the garage.

In 2016 the City of New Orleans ("the City") adopted short term rental ordinances which allowed her to use her second dwelling unit as an short term rental by right. The ordinances went into effect April 1, 2017.

In response, Marquardt and many homeowners obtained required short term rental permits. They invested significantly in time and money improving and furnishing their homes. These included blighted properties vacant since Hurricane Katrina. Homeowners then advertised on internet platforms such as Airbnb, counting on the income to pay for their investments, and sometimes, as a significant portion of their livelihoods.

The 2017 short term rental ordinance allowed an unlimited number of short term rental uses to operate in the area where Marquardt's property was located. Marquardt began using her garage apartment for short term rental use in 2017. Marquardt used her property for short term rental use for six years.

In 2023, the City Code and the City's Zoning Code were amended to make the zoning classification for short term rentals more restrictive by reducing the number of short term rental uses allowed in Marquardt's neighborhood from unlimited to just one per square block (hereinafter "the 2023 STR ordinances").[4] Marquardt's short term rental use was revoked by the 2023 ordinances, and a lottery was held to determine if she could get it back. A property just a few houses from Marquardt's property won the lottery. In essence, Marquardt short term rental business was summarily taken from her and randomly given to another.

The District Court determined that when the Zoning Code was amended by the 2023 STR ordinances to make the zoning classification more restrictive, including the elimination of Marquardt's short term rental, her short term rental use became a legal nonconforming use.[5] The District Court also determined that the denial of Marquardt's legal nonconforming use constituted a takings under the federal "Takings Clause."[6] However, there was just one significant caveat which is the crux of this appeal. The District Court limited the duration Marquardt's legal nonconforming use to the express term of her most recently issued permit which term ended in January 2024.[7] In this regard, the District Court created new law by

---

[4] ROA.3492.
[5] ROA.3516.
[6] ROA.3516.
[7] ROA.3518-3519.

writing a new additional method by which legal nonconforming use can be lost -- upon the expiration of an operational permit.

Marquardt agrees with everything in the District Court's opinion except the limitation of the term of her legal nonconforming use to (January 2024) the express term of her permit. The limitation of the legal nonconforming use to January 2024 is a denial of legal nonconforming use for the use of Marquardt's property as an short term rental, and is therefore contrary to law.

## B. Procedural History of This Litigation

Marquardt's action commenced in August 30, 2023, with a request for a temporary restraining order ("TRO") enjoining the City from enforcing 2023 ordinances.[8] The TRO was denied.[9]

On August 31, 2023, the District Court granted a temporary restraining order (TRO), enjoining the City from enforcing the 2023 short term rental ordinances ("2023 STR ordinances") against the *Hignell* plaintiffs,[10] Marquardt, and all persons using their property for short term rental in residential areas.[11] On September 12, 2023, Marquardt's case was consolidated with the *Hignell* case.[12]

---

[8] ROA.4501.
[9] ROA.4551.
[10] *See* ROA.42
[11] ROA.3133.
[12] ROA.3092-3093.

On September 27, 2023, the TRO was extended by preliminary injunction, and remained in effect until the February 27, 2024 ruling Marquardt now appeals.[13]

After extensive briefing, and three in-court hearings, the district court granted in part and denied in part, Marquardt's motion for summary judgment.[14] The District Court granted every item of relief requested by Marquardt – except one which is a poison pill.

The finding of the District Court which Marquardt disputes and appeals is the District Court erroneous conclusion that the City's Zoning Code required that the City grant nonconforming use status to her property **for the expressed term of the permit,**" thereby limiting the Takings Clause violation to two days.[15] In every other respect, Marquardt agrees with the facts and findings of the District Court.

To be clear, this appeal boils down to seven words -- "for the expressed term of the permit."

Marquardt timely noticed this appeal of the district court's Opinion on this very narrow issue on December 23, 2024, under 28 U.S.C. 1291.[16]

---

[13] ROA.3466.
[14] ROA.3518-3519.
[15] ROA.3518-3519.
[16] ROA.4015-4016.

## SUMMARY OF THE ARGUMENT

### A. Introduction

On April 1, 2017, plaintiff Tina Marquardt ("Marquardt") obtained her initial residential short term rental permit and had been operating continuously for several years.[17]

However, she did not win the lottery for the one short term rental permit for her square block and, thereafter, was informed by email from the City on August 28, 2023 that her permit would no longer be valid after August 31, 2023.[18]

The District Court granted legal nonconforming use with the right hand and took it away with the left hand as follows:

> At the time her residential STR permit was issued in 2017, Marquart argues that the City's original zoning scheme, applicable to her permit, promised that use of her licensed STR property would continue as a nonconforming use upon a change in the law notwithstanding any other provision in the ordinance. Therefore, the original zoning scheme under the relevant CZO required that the City grant nonconforming use status to her property **for the expressed term of the permit**."[19, 20]

In the very next paragraph, the District Court quoted the official CZO provision which does not include the "for the express term of the permit limitation" language, as follows:

---

[17] ROA.3512.

[18] *Id*.

[19] ROA.3512-3513.

[20] **(The District Court added the last seven words "for the expressed term of the permit" which do not exist in the CZO.)** (Emphasis added)

In addition to justifiable reliance upon the City of New Orleans Comprehensive Zoning Ordinance ("CZO"), the long-standing use of her property for short term rental purposes since 2017 established her property that her interest vested for Takings Clause purposes.[21]

The applicable § 25.2.C, entitled Authority to Continue, states:

> Notwithstanding any other provision in this ordinance, any structure, use, lot, or sign that existed as a lawful nonconformity at the time of the adoption of this Ordinance, and any structure, use, lot, or sign that has been made nonconforming because of the terms of this Ordinance or any subsequent amendment may continue to be subject to the provisions of this Article so long as it remains otherwise lawful.[22]

> CZO § 25.2.C.

The District Court went on to find both a legal nonconforming use for

Marquardt's property and a violation of the Takings Clause as follows:

> The issuance of short term rental owner/operator permits for her property created a property interest protected by due process notions that Marquart had a reasonable expectation of being honored. As such, **her property rights** also vested at time of issuance of the permits and **have nonconforming use status.**[23]

> The District Court held that the above-referenced email from the City on August 28, 2023 informing Marquardt, that her permit would no longer be valid after August 31, 2023 was a violation of the Takings Clause.[24]

---

[21] *Cf.* ROA.3512.
[22] ROA.3513.
[23] ROA.3516. (Emphasis added)
[24] *Id.*

On February 27, 2024, the District Court held that Marquardt only had a short legal nonconforming use right and an accompanying Takings Clause violation of a fundamental right to retain her short term rental permits -- until the expressed expiration dates of her permits.[25]

## B. Once a property obtains legal nonconforming use status, it virtually last forever.

In *League to Save Lake Tahoe v. Crystal Enterprises*, 685 F.2d 1142, 1146 (9th Cir. 1982), the Court recited a complete list ways a legal nonconforming use, once established, could be lost, as follows:

> Generally, the right to a nonconforming use exists only so long as the use continues to exist. A nonconforming use may terminate in one of several ways. These include amortization, abandonment, nonuse or discontinuance for a prescribed period, and voluntary or involuntary destruction.[26] Some zoning ordinances provide that if a nonconforming use is "discontinued" for a designated period of time it may not be resumed. The apparent objective of a provision using the term "discontinued" or "ceased" is to avoid the problem of having to prove intent to abandon a nonconforming use.[27]

It has never been held that a legal nonconforming use can be lost by the expiration of the express term of its operating permit.

---

[25] ROA.3513.

[26] *League to Save Lake Tahoe v. Crystal Enterprises*, 685 F.2d 1142, 1146 (9th Cir. 1982) citing 6 Powell on Real Property P 871(3)(f)(i).

[27] *Id*. citing *C. F. Lytle Co. v. Clark*, 491 F.2d 834, 837 (10th Cir. 1974).

**C. The City's Comprehensive Zoning Code (CZO) has never limited legal nonconforming use to the expressed term of the permit.**

The City's Comprehensive Zoning Code § 25.2.C (hereinafter "CZO" or "Zoning Code") provides:

> **Notwithstanding any other provision in this ordinance**, any structure, use, lot, or sign that existed as a lawful nonconformity at the time of the adoption of this Ordinance, and any structure, use, lot, or sign that has been made nonconforming because of the terms of this Ordinance or any subsequent amendment **may continue** to be subject to the provisions of this Article so long as it remains otherwise lawful.[28]

The Zoning Code clearly does not provide that the use made nonconforming because of any subsequent amendment may continue only until **the expressed term of the permit**.

Moreover, the Zoning Code definition does not limit a legal nonconforming use to the expressed term of the permit, to wit:

> **Nonconforming Use.** The use of a structure or land that does not comply with the use restrictions of the applicable zoning district. **A legal nonconforming use is a use that legally existed prior to the enactment of the current Ordinance and was legally maintained after the effective date of the Ordinance.**[29]

Also, legal nonconforming use status acquired through the five year period of Louisiana Revised 9:5625 does not limit legal nonconforming use to the expressed term of the permit:

---

[28] Emphasis added.

[29] City of New Orleans Zoning Code, Article 26. (Note the absence of "expressed term of the permit.")

LSA-R.S. 9:5625 further provides that property may achieve legal non-conforming use status if the period of time allowed for enforcing the zoning regulation prescribes:

B. In all cases where the prescription provided for herein (part A) has accrued, **the particular property involved** in the violation of the zoning restriction, building restriction or subdivision regulation, **shall enjoy the same legal status as land uses,** construction features of buildings or subdivisions **made nonconforming by the adoption of any zoning restriction,** building restriction or subdivision regulation. LSA-R.S. 9:5625.[30]

It would be nonsensical for an illegal use to occur for five years, become a legal nonconforming use through five year prescription, only to lose legal nonconforming use status upon the expressed term of an annual permit within a year or less.

*Redfearn v. Creppel*, 455 So.2d 1356, 1358-1359 (La., 1984), as codified in the City's Zoning Code, clearly provides that upon the amendment of the Zoning Code with a more restrictive zoning classification that results in a use no longer conforming with the Zoning Code, that "to avoid the hardship, injustice and doubtful constitutionality of compelling the immediate removal of objectionable buildings and uses already in the area…." the use is allowed **to continue** as a legal nonconforming use. No where does Louisiana caselaw limit legal nonconforming

---

[30] *City of New Orleans v. Hamilton*, 602 So.2d 112, 114-115 (La. App. 4 Cir., 1992) (Empasis added).

use to the expressed term of the permit months later. What kind of relief from hardship and injustice would that be?

A Bread and Breakfast is very similar to a short term rental in that both provide for overnight short-term accommodations, both are subject to almost identical operational requirements, and most importantly both have their operational permits renewed annually. In *Derbes v. City of New Orleans*, 941 So.2d 45 (La. App. 2006), once the Court held that Jim Derbes' Bed and Breakfast was a legal nonconforming use, it issued a judgment preventing the City from interfering with the use of his property as a Bread and Breakfast. The *Derbes* court did neither limited the injunction nor Derbes' legal nonconforming use to the express term of the permit, because no such limitation exists then and no such limit exists now. Derbes' Bed and Breakfast continues to operate to this day.[31]

Therefore, the District Court's holding that Marquardt's short term rental legal nonconforming use and accompanying Takings Claim was limited to the express term of her operating permit should be reversed.

---

[31] *See* https://www.derbesmansion.com.

# ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo*, applying the same standard as the district court.[32]

## II.    MOTION TO DISMISS STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Where the movant bears the burden of proof, it must demonstrate the absence of a genuine issue of material fact using competent summary judgment evidence.[33] Should the movant meet its burden, the burden shifts to the non-movant who must show by competent summary judgment evidence that there is a genuine issue of material fact.[34] When a motion for summary judgment identifies an absence of evidence that supports a material fact on which the non-movant bears the burden of proof, the non-moving party must set forth specific facts that show that there is a genuine issue.[35] When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the

---

[32] *Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013).

[33] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986).

[34] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994).

[35] *Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994).

motion for summary judgment, that evidence is not properly before the district court.[36] On cross motions for summary judgment, the Court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.[37]

## III.    BACKGROUND

### A. Introduction

The facts in this matter are not in dispute. The legal findings of the District Court are not in dispute except for one. The District Court's ruling was correct up until it wrote that the City of New Orleans Comprehensive Zoning Code (hereinafter "Zoning Code" or "CZO") limits a legal nonconforming use to the expressed term of the permit. The Zoning Code contains no such language. No City ordinance, no Louisiana case, and no treatise contains such language.

Tina Marquardt's ("Marquardt") position is that a legal nonconforming use is not limited to the express term of an operational permit.

### IV.    The District Court's Conclusion That The CZO Limited Marquardt's Legal Nonconforming Use For Short Term Rental To The Expressed Term Of Her Permit Was In Error As A Matter Of Law.

The District Court described Marquardt's argument as follows:

At the time her residential short term rental permit was issued in 2017, Marquart argues that the City's original zoning scheme, applicable to

---

[36] *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004)(cleaned up).
[37] *Texas v. Rettig*, 987 F.3d 518, 526 (5th Cir. 2021).

her permit, promised that use of her licensed short term rental property would continue as a nonconforming use upon a change in the law **notwithstanding any other provision in the ordinance**.[38]

Then, the District Court somehow and perplexingly made a conclusion from Marquardt's argument that legal nonconforming use was limited to "the express term of the permit," as follows:

> Therefore, the original zoning scheme under the relevant CZO required that the City grant nonconforming use status to her property **for the expressed term of the permit**.[39]

No where in any pleadings or in any transcript is the argument made by any party that nonconforming use is limited to the express term of a permit. The City has never limited legal nonconforming use to the express term of an operating permit.

Consequently, this conclusion of law was the conclusion of the District Court and the District Court alone. This conclusion of law by the District Court is in error and is not supported by the law.

## V.    The CZO Only Provides That A legal nonconforming use "Continues" Not That It Continues Only For The Express Term Of The Permit.

The applicable City of New Orleans Comprehensive Zoning Code, §25.2.C, entitled "Authority to Continue," provides that the use made nonconforming because of any subsequent amendment **may continue.** The legal nonconforming use

---

[38] *Hignell v. City of New Orleans*, 22-2991, 23-5000, Civil Action 19-13773, p.47 (E.D. La. Feb 27, 2024). (Emphasis added)
[39] ROA.3512-3513. (Emphasis added)

continues "so long as it remains otherwise lawful."[40] This means so long as the legal nonconforming use complies with nuisance laws, life safety codes, and operational requirements, it may continue.

No where does this or any other section of the CZO provide that a legal nonconforming use only last "for the expressed term of the permit." Moreover, in stating "Notwithstanding any other provision in this ordinance," the drafters made clear that when there is a change in a zoning classification from a less restrictive use to a more restrictive use, the determination of legal nonconforming use status is limited solely to the language of CZO § 25.2.C.

Therefore, any such limitation by "expiration upon the express term of the permit" of a legal nonconforming use would have to be the result of an amendment by the City Council of CZO §25.2.C, and not read into the CZO by the District Court.

The CZO clearly provides that the use made legally nonconforming because of any subsequent amendment may simply, continue.

## VI.  The CZO's definition of legal nonconforming use does not limit its duration to the express term of a permit.

CZO, Article 26, Definitions, does not limit a legal nonconforming use to the expressed term of the permit, to wit:

---

[40] *See* City of New Orleans Zoning Code § 25.2.C.

**Nonconforming Use.** The use of a structure or land that does not comply with the use restrictions of the applicable zoning district. **A legal nonconforming use is a use that legally existed prior to the enactment of the current Ordinance and <u>was legally maintained</u> after the effective date of the Ordinance.[41]**

Marquardt's short term rental legally existed prior to the current 2023 short term rental ordinances. She sought to maintain her short term rental use after the effective date of the 2023 short term rental ordinances. The District Court declared that Marquardt was entitled to legal nonconforming use status for her short term rental. The City unlawfully prohibited her from "maintaining" her use of her property for short term rental as a legal nonconforming use. Under the definition of legal nonconforming use, nothing limits "maintained" to the express term of a permit. Therefore, Marquardt has been unconstitutionally denied legal nonconforming use of her short term rental in violation of the federal Takings Clause.

## VII. Under Louisiana And Federal Caselaw, A Legal Nonconforming Use Of Property Is Not Lost By The Expiration Of The Express Term Of The Permit.

In *League to Save Lake Tahoe v. Crystal Enterprises*, 685 F.2d 1142, 1146 (9th Cir. 1982), the court enumerated a complete list of ways a legal nonconforming use, once established, could be lost, as follows:

Generally, the right to a nonconforming use exists only so long as the use continues to exist. A nonconforming use may terminate in one of several ways. These include amortization, abandonment, nonuse or

---

[41] City of New Orleans Zoning Code, Article 26. (Emphasis added)

discontinuance for a prescribed period, and voluntary or involuntary destruction.[42] Some zoning ordinances provide that if a nonconforming use is "discontinued" for a designated period of time it may not be resumed. The apparent objective of a provision using the term "discontinued" or "ceased" is to avoid the problem of having to prove intent to abandon a nonconforming use.[43]

Once obtained, a legal nonconforming use can only be lost by discontinuance for six months, change of use to a different of more intense use, eminent domain for a public purpose for which just compensation is due, amortization (which the City has not attempted since the *Dema Realty* cases of the 1920's[44]), and the destruction of a legally nonconforming structure followed by a failure to rebuild the structure and resume the use within in one year.

"A claim that property has acquired a legal nonconforming status is an affirmative defense and carries a burden of proof by a preponderance of the evidence.[45] This burden may be met by showing that the property was used for a nonconforming purpose at the time the ordinance was enacted.[46] Once this burden has been met, the burden then shifts to the party seeking to enforce the zoning

---

[42] *League to Save Lake Tahoe v. Crystal Enterprises*, 685 F.2d 1142, 1146 (9th Cir. 1982) citing 6 Powell on Real Property P 871(3)(f)(i).

[43] *Id*. citing C. F. Lytle Co. v. Clark, 491 F.2d 834, 837 (10th Cir. 1974).

[44] *See State ex rel. Dema Realty Co. v. Jacoby*, 123 So. 314, 168 La. 752 (La. 1929), and *State ex rel. Dema Realty Co. v. McDonald*, 121 So. 613, 168 La. 172 (La. 1929).

[45] *Hamilton*, at 115 (La. App. 4 Cir., 1992) citing *City of New Orleans v. Elms*, 566 So.2d 626, 630 (La.1990); and *City of New Orleans v. Cantelli*, 136 So.2d 838 (La.App. 4th Cir.1962).

[46] *Id*. citing *City of Lafayette v. Black*, 336 So.2d 982 (La.App. 3rd Cir.1976), writ den. 339 So.2d 850 (La.1976).

restriction to show that such use has been interrupted by six months thus losing its nonconforming status.[47]"

None of the ways identified by the *League to Save Lake Tahoe* court were pled by the City of New Orleans to meet the burden that shifted to it. It is undisputed that Marquardt showed that her property was used for a purpose made nonconforming by the enactment of the 2023 STR ordinances. And the District Court confirmed this showing of legal nonconforming use in its opinion. The burden then shifted to the City. It was the City's burden to show that the legal nonconforming use had somehow been lost. No where in the District Court's opinion is it stated that the City showed that in any lawful way, including any of the *League to Save Lake Tahoe* ways, that Marquardt's property lost its legal nonconforming use for short term rental. The City did not even attempt to argue Marquardt lost her legal nonconforming use through the (nonexistent) expiration of the express term of her permit.

Therefore, Marquardt sustained her burden that her property acquired legal nonconforming use status as a short term rental so long as her use did not violate any general laws of the City of New Orleans.

---

[47] *Id.* citing *City of New Orleans v. Elms*, 566 So.2d at 630.

## VIII. The District Court's Application Of *Redfearn V. Creppel's*[48] "viewed narrowly" Language Was A Misapplication Of The Law.

The District Court "narrowly viewed" the "continuation" of Marquardt's short term rental legal nonconforming use, as follows:

> THE COURT: There's a circuit opinion as well, I believe, out of maybe the Fourth Circuit. I'm going to quote from Redfearn and ask you in this regard if this has changed any under Louisiana law: "The purpose of zoning ordinances is to confine certain classes of buildings and uses to certain localities. Because a nonconforming use is inconsistent with this objective, it should, consistently with the property rights of the individuals affected and substantial justice, be **viewed narrowly** and have all doubts resolved **against continuation or expansion** of the nonconformity." That's the court in Redfearn at 455 So.2d 1359. Do you see that?
>
> \*   \*   \*
>
> THE COURT: What's your reaction to this if you take that language about **narrowly construing** the **continuation of or expansion** of the nonconformity -- which is what I was considering when I issued my opinion about, yes, you have shown a nonconforming use, yes, you have shown a takings, but I did not find a basis -- given that narrow viewpoint, the view of these things continuing or even expanding, I found that basically it ended. [49]

The District Court erred where, as the District Court itself states, "narrowly construing" applies to the **continuation of** or **expansion of** a legal nonconforming use. In *Villavicencio v. Alcoholic Beverage Control Bd.*, 543 So.2d 575, 577 (La. App. 1989) the court distinguished between the "**establishment of a**

---

[48] 455 So.2d 1356 (La., 1984).

[49] ROA.4412-4413 (Emphasis added); and ROA.4410-4417. (for the entire discussion)

**nonconforming use"** and the "**continuation** of a nonconforming use already legally established."** The Court instructed that "the Zoning Code provides for the discontinuance of a [already] legally established nonconforming use and the only grounds therefor are a lapsed use of six months or more and a "make-shift" and/or "pretended" use.

Here, we are not dealing with the "continuation" or discontinuance of "a nonconforming use already legally established." This is not a "continuation" case, because this matter does not involve discontinuance of an already legally established nonconforming use … [where] the only grounds therefor are a lapsed use of six months or more and a 'make-shift' and/or "pretended" use." Therefore, Marquardt's reaction to the District Court's inquiry of "**[w]hat's your reaction to this if you take that language about narrowly construing the continuation of or expansion of the nonconformity**" is that "narrowly construing the continuation of the conformity does not apply in this matter, because this is not a continuation or "six month" discontinuance case; where this case does not concern the continuation of an already established legal nonconforming use and a contested six month discontinuance, "narrowly viewed" does not apply. "Narrowly viewed" only applies to narrowly viewing on the side of finding there has been a six month discontinuance of an already established legal nonconforming use. It also applies to narrowly viewing on the side that an illegal expansion of a nonconforming use has occurred.

The instant matter is an "establishment of a nonconforming use" case. In an establishment of a nonconforming use case, the sole consideration, as instructed by Zoning Code § 25.2.C's "Notwithstanding any other provision in this ordinance…" language, is whether or not there has been a restrictive amendment of the Zoning Code which precipitated the need for legal nonconforming use, as follows:

> **Notwithstanding any other provision in this ordinance**, any structure, use, lot, or sign that existed as a lawful nonconformity at the time of the adoption of this Ordinance, and any structure, use, lot, or sign that has been made nonconforming because of the terms of this Ordinance or any subsequent amendment **may continue** to be subject to the provisions of this Article **so long as it remains otherwise lawful**.[50]

Section 25.2.C makes clear, the consideration of the continuation or discontinuance of a six month vacancy, of a "nonconforming use already legally established" does not apply. Only the initial establishment of a legal nonconforming use is considered. There is no "continuation" that exists to consider. Therefore, "viewed narrowly" does not apply.

Therefore, it was legal error for the District Court to apply a "continuation" case's "viewed narrowly" standard to Marquardt's "establishment" case involving her short term rental legal nonconforming use. Moreover, it was the City's burden, not the District Court's, to established any application of "viewed narrowly," "continuation," "discontinuance for six months," or that Marquardt's legal

---

[50] Emphasis added.

nonconforming use ended before it had a chance to be established. The City did not even hint at such arguments. The City failed to carry its burden. Therefore, under Zoning Code § 25.2.C, Marquardt established a legal nonconforming use which was entitled to continue absent a six month discontinuance sometime in the future.

### IX. THE LOSS OF LEGAL NONCONFORMING USE BY EXPIRATION OF THE EXPRESS TERM OF THE PERMIT VIOLATES THE LOUISIANA STATE CONSTITUTION.

Legal nonconforming use is constitutionally protected. Therefore, if the City attempted to provide for the loss of legal nonconforming use by expiration of the express term of the permit, it would be unconstitutional.

The Louisiana Supreme Court has stated, and numerous Louisiana appellate courts have followed, *Redfearn v. Creppel*, 455 So.2d 1356, 1358-1359 (La., 1984), which established:

> The permitted **continuation** of a nonconforming use is designed to avoid the hardship, injustice and **doubtful constitutionality** of compelling the immediate removal of objectionable buildings and uses already in the area.[51]

The City cannot legislatively overrule by ordinance the Louisiana Supreme Court's declaration of constitutionality of property rights through legal nonconforming use. Therefore, even if the CZO contained the "loss of legal

---

[51] *Id*. citing *Fuller v. City of New Orleans*, 311 So.2d 466 (La.App. 4th Cir.1975); *City of Lake Charles v. Frank*, 350 So.2d 233, 235 (La.App. 3rd Cir.1977); *Gauthier v. Village of Larchmont*, 30 A.D.2d 303, 291 N.Y.S.2d 584, 586 (1968); 101 C.J.S. Zoning Sec. 181. (Emphasis added)

nonconforming use by expiration of the express term of the permit" as read into the CZO by the District Court, such a provision would be contrary to Louisiana Supreme Court, and numerous Appellate court decisions holding that the issuance of a permit **is the remedy** to effectuate legal nonconforming use, not demise of legal nonconforming use by limitation of nonconforming use to the express term of the permit.

**X.  Upon A Determination That Marquardt's Property Was A Legal Nonconforming Use, Marquardt Was Entitled To The Grant Of Permits For The Purpose Of Continuing In Her Short Term Rental.**

The District Court determined that "[a]t the time her residential short term rental permit was issued in 2017, Marquart argues that the City's original zoning scheme, applicable to her permit, promised that use of her licensed short term rental property would continue as a nonconforming use upon a change in the law notwithstanding any other provision in the ordinance. Therefore, the original zoning scheme under the relevant CZO required that the City grant nonconforming use status to her property…."[52] This is where and how the District Court's analysis and conclusion should have ended. And, the remedy should have included an order to **issue operating permits, going forward**, to effectuate Marquardt's legal nonconforming use and to enjoin the City's interference with said use, as so many courts have done.

---

[52] ROA.3512-3513.

In *Villavicencio v. Alcoholic Beverage Control Bd.*, 543 So.2d 575, 576 (La. App. 1989), after finding that **plaintiff had a legal nonconforming use**, the appellate court upheld the "trial court's judgment **granting an injunction** requested by petitioners, Maria and Edgar Villavicencio, **ordering** the City of New Orleans **to issue an alcoholic beverage permit** to operate a bar and lounge at 2604 Magazine Street."[53]

In *Vieux Carre Prop. Owners v. City of New Orleans*, 216 So.3d 873 (La. App. 2015), upon Antoine's Restaurant sufficiently establishing the existence of a legal nonconforming use in accordance with the requirements of the Zoning Code, the Appellate court upheld the trial court's **order** of **the issuance of the Mayoralty Permit** for live entertainment.

In *Panzeca v. City of New Orleans*, 580 So.2d 489, 493 (La. App. 1991), the court found that where plaintiff established a **nonconforming use** pursuant to La. 9:5625's two-year prescriptive period, it upheld "the trial court's **order** for **the issuance of necessary licenses** for the plaintiffs **to operate the premises** located at 800 Bourbon Street **on a continuing** and non-conforming basis."[54]

In *Parish of Jefferson v. H4TH & B, Inc.*, 155 So.3d 567, 570-571 (La. App. 2013), the court observed "La. R.S. 9:5625(B) … provides that once prescription on

---

[53] Emphasis added.
[54] *Id*. at 490. (Emphasis added)

zoning enforcement has run, the **non-conforming use becomes legal <u>so long as it</u> <u>continues</u>**, and La. R.S. 9:5625(E) … provides that "[t]he provisions of this Section shall supersede any other provisions of law inconsistent herewith."[55]

Lastly, a Bread and Breakfast is very similar to an short term rental in that both provide for overnight short-term accommodations, both are subject to almost identical operational requirements, and most importantly both are limited to annually renewable operational permits. In *Derbes v. City of New Orleans*, 941 So.2d 45 (La. App. 2006), once the Court held that Jim Derbes' Bed and Breakfast was entitled to legal nonconforming use status, it **issued an injunction** preventing the City from interfering with his use of his property as a Bread and Breakfast. **The *Derbes* court did not limit** the injunction and Derbes' **legal nonconforming use to the express term of the permit**, because no such limitation existed then, and no such limit exists now.

All of these cases instruct that upon a finding of the existence of a legal nonconforming use in a property, the court orders as a remedy, the issuance of permits and/or injunctive relief to allow the continuance, without limitation as to duration of the use, as process by which the court's determination of legal nonconforming use will be effectuated, for as long as the property is in compliance with other laws that are normally and uniformly applicable to all businesses.

---

[55] Emphasis added.

**XI.    Restricting Legal Nonconforming Use To The Express Term Of The Permit Would Render Legal Nonconforming Use Obtained Pursuant To Louisiana Revised Statute 9:5625 Meaningless.**

Legal nonconforming use status acquired through the five year prescriptive period of Louisiana Revised 9:5625 does not limit newly obtained legal nonconforming use to the expressed term of the permit:

> LSA-R.S. 9:5625 further provides that property may achieve legal non-conforming use status if the period of time allowed for enforcing the zoning regulation [five years from receipt written notice to the City] prescribes:
>
> B. In all cases where the prescription provided for herein (part A) has accrued, **the particular property involved** in the violation of the zoning restriction, building restriction or subdivision regulation, **shall enjoy the same legal status as land uses,** construction features of buildings or subdivisions **made nonconforming by the adoption of any zoning restriction,** building restriction or subdivision regulation. LSA-R.S. 9:5625.[56]

In *Parish of Jefferson v. H4TH & B, Inc.*, 155 So.3d 567, 570-571 (La. App. 2013), the court observed "La. R.S. 9:5625(B) … provides that once prescription on zoning enforcement has run, the **non-conforming use becomes legal so long as it continues**, and La. R.S. 9:5625(E) … provides that "[t]he provisions of this Section shall supersede any other provisions of law inconsistent herewith."

If after five years, a property acquired legal nonconforming use status under the statute that could be lost in just months by the expiration of the express term of

---

[56] *Hamilton* at 114-115. (Empasis added).

an annual permit, it would lead to absurd consequences and render the statute meaningless. For example, there would be no reason to have an Alcoholic Beverage Outlet (ABO) Board in the City of New Orleans. For any bar the City Council would desire to eliminate, the process would be as follows. Change the zoning to remove alcohol use for the property where the bar is located. The bar would then become a legal nonconforming use which would terminate upon the expiration of the express **one year term** of the alcohol permit – the term that is applicable to all alcoholic beverage outlets in Orleans parish.[57]

Lastly, the District Court's opinion renders legal nonconforming use litigation pointless. Suit was filed on August 30, 2023. Marquardt's permits were due to expire five months later in January 2024. If it is the law that legal nonconforming uses expire upon the expiration of the express term of their permits, then the litigation of any legal nonconforming use with an one-year permit would be a losing proposition that no plaintiff would take to court. Unless the business is making a ton of money per month, it would never be worthwhile to litigate the right of a business which is limited to an existence of less than one year.

## CONCLUSION

There is no provision in the CZO for the which limits the duration of a legal nonconforming to the express term of the permit. Such a provision would render

---

[57] *See* Code of the City of New Orleans, §10-123.

legal nonconforming use meaningless. Such a provision would conflict with Louisiana Revised Statute 9:5625. Such a provision would overwhelmingly conflict with Louisiana case law. Marquardt carried her burden of establishing that she had a continuing legal nonconforming use. Upon the burden of proof shifting to the City, there is no finding by the District Court that the City successfully rebutted Marquardt's affirmative defense of legal nonconforming use. Injunctive relief and the ordering of the issuance of a permit is the remedy once legal nonconforming use is established by the mover -- not a ruling ordering the legal nonconforming use's immediate demise. The Louisiana Supreme Court has established that legal nonconforming use is protected under the Louisiana Constitution, and therefore, the District Court's conclusion that an alleged provision of a subordinate City ordinance leads to the conclusion of the expiration of a legal nonconforming use upon the expiration of the permit conflicts with the Louisiana Constitution. With the Louisiana Supreme Court being the final arbiter of state law, such a decision must yield to the Louisiana Supreme Court's interpretation of the Louisiana State Constitution that legal nonconforming use continues. Lastly, allowing for the termination of legal nonconforming use upon the expiration of the express term of the permit would render parish ordinances providing for legal nonconforming use around the state, and La. R.S. 9:5625, meaningless.

For the forgoing reasons, this Court should (1) reverse the District Court's ruling that Marquardt's short term rental legal nonconforming use was limited in duration by the express term of her short term rental operating permit, (2) reverse the District Court's ruling that Marquardt's Takings Clause claim was limited in duration by the express term of her short term rental operating permit, and (3) permanently enjoin the City of New Orleans from interfering with Tina Marquardt's use of property as a legal nonconforming use for short term rental.

SUBMITTED BY:

/s/Edward R. Washington, III
Counsel for Appellant
7130 East Renaissance Court
New Orleans, LA 70128

**CERTIFICATE OF SERVICE**

I certify that on March 24, 2025, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

**Donesia Turner**
**Corwin St. Raymond**
**Sherri Hutton**
**Attorneys for the City of New Orleans**

/s/Edward R. Washington, III

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1 this document contains 7,187 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using WordPerfect in 14 point Times New Roman font.

/s/Edward R. Washington, III