No. 24-30802

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

**TINA MARQUARDT,**
**PLAINTIFF– APPELLANT/CROSS-APPELLEE**
v.
**CITY OF NEW ORLEANS,**
**DEFENDANT – APPELLEE/CROSS-APPELLANT**

---

Civil Proceedings On Appeal from the United States District Court
for the Eastern District of Louisiana, Hon. Ivan L.R. Lemelle presiding
*Hignell et. al. v The City of New Orleans*
No. 2:19-cv-13773, c/w 22-cv-2991, 2:23-cv-5000

---

## ORIGINAL BRIEF OF APPELLEE/CROSS-APPELLANT
## CITY OF NEW ORLEANS

---

Submitted by:

**Sherri L. Hutton** LSBA # 28369
Assistant City Attorney
**Sean M. Markey** LSBA# 41467
Assistant City Attorney
**Corwin St. Raymond**, LSBA# 31330
Chief Deputy City Attorney
**Shawn Lindsay**, LSBA #28466
Deputy City Attorney
**Kevin C. Hill,** LSBA# 26338
Sr. Chief Deputy City Attorney
**Donesia D. Turner**, LSBA #23338
City Attorney
1300 Perdido Street, Room 5e03
New Orleans, Louisiana 70112
Telephone: (504) 658-9800
 Email:  sherri.hutton@nola.gov
*Appeal Counsel, City of New Orleans*

No. 24-30802

# In the
# United States Court of Appeals
# for the Fifth Circuit

_____

**TINA MARQUARDT,**
**PLAINTIFFS – APPELLANT/CROSS-APPELLEE**
v.
**CITY OF NEW ORLEANS ,**
**DEFENDANT – APPELLEE/CROSS-APPELLANT**
_____

Civil Proceedings On Appeal from the United States District Court
for the Eastern District of Louisiana, Hon. Ivan L.R. Lemelle presiding
*Hignell et. al. v The City of New Orleans*
No. 2:19-cv-13773, c/w 22-cv-2991, 2:23-cv-5000
_____

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an

interest in the outcome of this case. These representations are made in order that the

judges of this court may evaluate possible disqualification or recusal.

1.  Plaintiff-Appellant/Cross-Appellee, Tina Marquardt
    Represented by:
    Edward Washington,
    Washington Law Firm
    New Orleans, LA

2.  Defendant-Appellee/Cross-Appellant, The City of New Orleans
    Represented by:

Sherri L. Hutton
Sean M. Markey
Corwin St. Raymond
Shawn Lindsay
Kevin C. Hill
Donesia D. Turner
City Attorney's Office
1300 Perdido Street, Room 5e03
New Orleans, Louisiana 70112

3.     White Spider Rental Concierge LLC, Garett Majoue, Russell
       Frank, Samantha McRaney, Bob McRaney, Jimmie Taylor,
       Kurt Klebe, Samantha Hignell-Stark, Summit NOLA III, LLC.
       Represented by:
       Dawn Wheelahan
       New Orleans, Louisiana

4.     Amicus Faubourg  Marigny Improvement Association
       Represented by:
       Galen S. Brown,
       Sullivan Stolier Schulze, LLC,
       New Orleans, Louisiana

5.     Texas Public Policy Foundation
       Represented by:
       Christian Townsend
       Chance Weldon
       Austin, TX

                          */s/Sherri L. Hutton*
                          Attorney, City of New Orleans

**STATEMENT REGARDING ORAL ARGUMENT**

The City of New Orleans submits that oral argument is not necessary as the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

Contents                                                                    Page(s)

Certificate Of Interested Persons ...................... ...................................i-ii

Statement Regarding Oral Argument ...................................................iii

Table of Contents ...................................................................... iv

Table of Authorities…………………………………………………………v-vi

Statement of Issues Presented for Review .................................................1

Statement of The Case ...................................................................2

    I. Legislative History of the STR Ordinances……………………………2-7

    II. Procedural History of Marquardt's Case………………………………2-8

Summary of the Argument........................ ...............................9-12

Standard of Review……………………………………………………………12-13

Argument...................................................................2

Conclusion ........................................................... 13-22

Certificate of Compliance ...........................................................24

# TABLE OF AUTHORITIES

**Cases………………………………………………………………….Pages(s)**


*Bell v. Burson*, 402 U.S. 535, 539 (1971)                                18

*Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).            13

*Dennis Melancon, Inc. v. City of New Orleans*,                           10
703 F.3d 262, 270 (5th Cir. 2012)

*Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015)            13

*Hignell-Stark v. City of New Orleans*, 46 F.4th 317 (5th Cir. 2022)  5, 10, 11, 23, 17

*Montecino v. Louisiana,* 55 F. Supp. 2d 547 (E.D. La. 1999)             18

*Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998)               17

*TXI Operations, LP v. City of Mckinney, Texas*, No. 20-353,             18
2023 WL 161942 (E.D. Tex. Jan. 11, 2023)

*Redfearn v. Creppel,* 455 So. 2d 1356, 1358 (La. 1984).                 12

*Robinson v. Orient Marine Co.*, 505 F.3d 364, 366 (5th Cir. 2007)       13

**STATUTES**                                                    **Page(s)**

42 U.S.C. § 1988(b)                                            2, 22, 25

City Code Sec. 26-613(b).                                      13

City Code Sec. 26-615 (c)                                      13

CZO § 1.5.C.                                                   12

CZO 21.8.C.18                                                  22, 23

CZO § 25.2.C                                                   14

CZO § 25.3.C.4                                                 15

CZO § 25.2.D                                                   13

Ordinances 29381 M.C.S. and 29382 M.C.S                       7,8,19

FED. R. CIV. P. 56(a).                                        13

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Defendant-Appellee/Cross-Appellant the City of New Orleans (the "City") respectfully presents the following issues for review:

I.    Appellant/Cross Appellee, Marquardt, ("Marquardt") asserts that the District Court erred in 1) holding that her motion for summary judgment was  partially "Granted insofar as she has shown a Takings Clause violation of a fundamental right to retain her STR permits until their expressed expiration dates;"[1]  and 2)  in holding that "it is likely that damages for Marquardt should be limited to a period beginning on August 28, 2023 and ending on or about August 31, 2023…"[2]

II.    The City asserts that the District Court erred in its analysis finding that Marquardt was a "prevailing party" under 42 U.S.C. § 1988(b) and therefore entitled to an **award** of attorney fees, even though her damages arising from bookings she may have had to cancel during the time period of August 28 – August 31, 2023, due to a directive from the City, that was soon after enjoined via an order of the District Court The City asserts Marquardt's success was at most, *de minimis,* and the District Court abused its discretion in awarding **$26,770.30** in attorneys' fees under 42 U.S.C. § 1988(b). Alternatively, the American Rule should be followed with each

---

[1] ROA.3519
[2] ROA.3518

party to bear its own costs.

## STATEMENT OF THE CASE

### I.    Legislative History of the STR Ordinances

Prior to April 2017, it was illegal under New Orleans City Code Sec. 54-491.1(b) to rent a living accommodation for fewer than thirty days (or fewer than sixty days in the French Quarter).[3]    After the New Orleans City Planning Commission (the "CPC") studied this issue at the behest of the City Council in 2016,[4] the City Council established a framework for permitting short term rentals in New Orleans in 2017.[5]    The following year, however, the City Council directed the CPC to reevaluate the City's STR laws due to "the proliferation of the industry, and the unintended effects of the current short term rental requirements." [6]    The CPC was charged with providing recommendations to address the "growing concerns

---

[3]    City Code Sec. 54-491.1(b) ("It shall be unlawful for any person to knowingly offer to rent for monetary compensation for a period of less than 30 days or, in the case of premises located in the Vieux Carré District, 60 days, any living accommodations in the city if the premises offered for rent are not lawfully licensed or permitted for such use."); *available at* https://library.municode.com/la/new_orleans/codes/code_of_ordinances

[4]    ROA. 1407-1562, New Orleans City Planning Commission Short Term Rental Study, 2018 Edition (September 18, 2018) (hereinafter the "2018 Short Term Rental Study"), at ROA 1423, ("The City Planning Commission first studied short term rentals in fall of 2015, and the first study was approved by the Planning Commission on January 26, 2016. During this first study, CPC found that there were very limited regulations on short term rentals and they were not allowed in most parts of the City."); *The study is also  available at:* https://cityofno.granicus.com/MetaViewer.php?view_id=2&clip_id=3092&meta_id=424028. ROA 1363 (Study certified by CPC Executive Director Robert D. Rivers)

[5]    ROA. 1425-1426 (2018 Short Term Rental Study)

[6]    ROA. 1210

regarding the affects STRs have on communities and neighborhoods."[7] The CPC found significant quality of life problems created by widespread whole home rentals:

> The lack of a permanent resident requirement, the generous 90-day limit, and the absence of density restrictions has led to a proliferation of temporary STR licenses. The Temporary Short Term Rental license type has become a de-facto whole-home rental, with no permanent resident or owner present. This has led to quality of life issues, such as noise, loss of neighborhood character, and other impacts discussed further in this report. These negative impacts are exacerbated in residential areas, where most of the temporary licenses are located.[8]

Regarding affordable housing, the CPC found that although a number of factors had increased housing costs, "there is sufficient anecdotal evidence that STRs have exacerbated an already difficult market especially in the Historic Core, Historic Urban, and Central Business District neighborhoods where concentrations of STRs have been greatest.[9] The CPC also found that "[f]inding a home to rent or purchase within an affordable range has become a significant challenge for many New Orleans residents," and "[t]he city's housing condition has now escalated into a crisis level situation where the lack of affordable housing is affecting residents . . ."[10]

---

[7] ROA. 1210. The methodology of the study included reviewing the City's existing regulations and enforcement, short term rental data, best practices from eleven other municipalities, other reports, public hearings, and land use analyses.

[8] ROA. 1214

[9] ROA. 1215

[10] ROA. 1215

Following many public meetings, the City Council enacted ordinances which modified the CZO and the City Code. As this Court is aware, a number of Plaintiffs filed suit challenging the constitutionality of the new ordinances. That litigation ultimately resulted in the Court of Appeals for the Fifth Circuit ruling that portions of the ordinances were unconstitutional due to violating the Dormant Commerce Clause.[11]

In response to the *Hignell* decision, the City Council began the process of revising the STR ordinances. On October 20, 2022, the City Council passed a new Motion, M-22-467 which created an interim zoning district (IZD) prohibiting the issuance of new residential STR permits in the City. [12,13] Following this, the Council passed Motion M-22-485 on November 3, 2022.[14] The motion directed the CPC to conduct a study regarding the modification of the City's short term rental regulations in light of the *Hignell* decision.

On December 6, 2022, the CPC issued its preliminary report regarding M-22-467, the IZD motion.[15] Thereafter, the CPC held a public hearing to discuss ZD095-

---

[11]  *Hignell-Stark v. City of New Orleans*, 46 F. 4th 317 - Court of Appeal (5th Cir. 2022).
[12]  (10/20/22) Council Meeting, *available at*
      https://cityofno.granicus.com/MediaPlayer.php?view_id=42&clip_id=4268&meta_id=604864
[13]  10/20/22, M-22-467, *available at:*
      https://cityofno.granicus.com/MetaViewer.php?view_id=42&clip_id=4268&meta_id=604865
[14]  11/3/2022, M-22-485, Council Meeting, available at:
      https://cityofno.granicus.com/MediaPlayer.php?view_id=42&clip_id=4298&meta_id=607734
[15] 12/6/2022, M-22-467
https://cityofno.granicus.com/MetaViewer.php?view_id=42&clip_id=4343&meta_id=612046

22 regarding the IZD.[16]  Following the hearing, which included public comment, The CPC voted to defer its decision on the IZD until its January 24, 2023, meeting.[17]

On January 13, 2023 and January 18, 2023, the City Planning Commission ("CPC") updated its prior reports regarding M-22-467[18] and M-22-485[19] respectively.  Thereafter, the CPC met and held a public hearing to consider Zoning Docket 095-22 pertaining to the M-22-467, the STR IZD, and Zoning Docket 002-23 pertaining to M-22-485, the STR regulation changes.[20] The CPC voted to recommend the text amendments to the New Orleans City Council for approval as modified.[21]

On March 2, 2023, the City Council met to consider M-23-84 regarding the CPC's report and recommendation of "modified approval" from the CPC.[22] Following the hearing and public comment, the Council then voted to approve M-23-84[23] as amended.[24] The City's next public meeting regarding the STR Ordinances

---

[16] https://cityofno.granicus.com/MediaPlayer.php?view_id=42&clip_id=4343
[17]  https://cityofno.granicus.com/MediaPlayer.php?view_id=42&clip_id=4343

[18] M-22-467 Report, *available at*:
  https://cityofno.granicus.com/MetaViewer.php?view_id=42&clip_id=4395&meta_id=617442
[19] M-22-485 Report, *available at*:
  https://cityofno.granicus.com/MetaViewer.php?view_id=42&clip_id=4395&meta_id=617444
[20] 01/24/23 CPC Meeting, *available at*:
  https://cityofno.granicus.com/MediaPlayer.php?view_id=42&clip_id=4395&meta_id=617443
[21] CPC Staff Report, a*vailable at*
  https://cityofno.granicus.com/MetaViewer.php?view_id=42&clip_id=4438&meta_id=622988
[22] 03/02/2023 Special City Council, a*vailable at*:
  https://cityofno.granicus.com/MediaPlayer.php?view_id=42&clip_id=4438&meta_id=622986
[23] M-23-84 *available at*
  https://cityofno.granicus.com/MetaViewer.php?view_id=42&clip_id=4438&meta_id=622966
[24] Amendments to M-23-84 *available at*
  https://cityofno.granicus.com/MetaViewer.php?view_id=42&clip_id=4438&meta_id=621743

was held at a March 14, 2023 joint meeting of the City Council's Governmental Affairs and Quality of Life Committees. At the meeting, presentations were made regarding STR administrative and enforcement procedures, proposed changes to the CZO, and tax collection.[25]

On March 23, 2023, the City Council held its regular public meeting at which the STR Ordinances were considered.[26] Following hours of commentary by the City Council and the public at large,[27] the City Council adopted Ordinance Nos. 29,381 M.C.S. and 29,382 M.C.S as amended.[28] The STR Ordinances were returned to the City Council by the Mayor on March 31, 2023,[29] and went into effect on July 1, 2023.[30]

The record demonstrates that the CPC and City Council thoroughly studied a range of concerns related to short term rentals, held numerous hearings taking public

---

[25] 03/142023 Joint Meeting of Governmental Affair and Quality of Life Committee, a*vailable at*) https://cityofno.granicus.com/MediaPlayer.php?view_id=42&clip_id=4456&meta_id=623803

[26] The City Council also formally adopted the IZD at this meeting. *available at:* https://cityofno.granicus.com/MediaPlayer.php?view_id=42&clip_id=4474&meta_id=626550

[27] 03/23/2023 City Council Meeting, *available at:* https://cityofno.granicus.com/MediaPlayer.php?view_id=42&clip_id=4474&meta_id=626369

[28] (Ord. No. 29,381 M.C.S*), available* at  https://nola.gov/nola/media/One-Stop-Shop/029381-MCS-(As-Amended).pdf and (Ord. No. 29,382 M.C.S.), *available at* https://nola.gov/nola/media/One-Stop-Shop/029382-MCS-(As-Amended).pdf.

[29] (Ord. No. 29,381 M.C.S*), available* at  https://nola.gov/nola/media/One-Stop-Shop/029381-MCS-(As-Amended).pdf and (Ord. No. 29,382 M.C.S.), *available at* https://nola.gov/nola/media/One-Stop-Shop/029382-MCS-(As-Amended).pdf.

[30] (Ord. No. 29,381 M.C.S*), available* at  https://nola.gov/nola/media/One-Stop-Shop/029381-MCS-(As-Amended).pdf and (Ord. No. 29,382 M.C.S.), *available at* https://nola.gov/nola/media/One-Stop-Shop/029382-MCS-(As-Amended).pdf.

comment on the specific provisions at issue here, and acted deliberately with a legitimate governmental interest that best served the health, safety, and welfare of the City as a whole.  To that end, the City's new STR Ordinances contain the following statement of purpose:

> This article is adopted pursuant to the city's police power to preserve the city's permanent housing stock, balance the economic opportunity created by short-term rentals with the need to maintain a supply of long-term rental housing stock available at a range of prices, reduce any indirect negative effects on the availability of affordable housing that results from the dedication of long term housing stock to short-term rental use, create a level playing field for all parties engaged in the business of providing lodging, ensure the sufficient collection of tax revenue, mitigate the disruptive effects that unmonitored short-term rentals can have on neighborhoods, and protect the livability and quality of life of the city's residential neighborhoods.[31]

The new STR Ordinances were enacted with adequate notice to the community, afforded ample opportunities to be heard, and were rationally tailored to address legitimate public concerns.

## II.    Procedural History of Marquardt's Case

On April 1, 2017, plaintiff Tina Marquardt obtained her initial residential STR permit and had been operating continuously for several years. [32] A City document

---

[31] Ord. No. 29,381 M.C.S*), available at* https://nola.gov/nola/media/One-Stop-Shop/029381-MCS-(As-Amended).pdf and (Ord. No. 29,382 M.C.S.)*, available at* https://nola.gov/nola/media/One-Stop-Shop/029382-MCS-(As-Amended).pdf. Sec. 26-613(b).

[32] ROA. 3280

indicates that on December 27, 2022 she filed an application for new owner and operator permits, receiving approval on January 13, 2023 with an expiration date of August 31, 2023. [33] On January 13, 2023, she paid five hundred dollars for the permits. [34] The official owner and operator STR permits issued by the City on January 13, 2023 show expiration dates of January 20, 2024, and January 12, 2024, respectively. [35] Marquardt reportedly had the only STR on her blockface at the time of issuance of the latter and other previous permits. [36]

However, Marquardt did not win the newly enacted lottery for the one STR permit for her block and, thereafter, was informed via email from the City on August 28, 2023 that her permit would no longer be valid after August 31, 2023. [37] The City's email directed her to cancel all STR bookings for her property after the latter date. [38]

Marquardt's separate action was filed on August 30, 2023 at the District Court with a request for a TRO, enjoining the City from enforcing the 2023 ordinances. [39] The TRO was denied. [40] That action was eventually consolidated with *Hignell*

---

[33] ROA. 3278-3279

[34] ROA. 3299
[35] ROA. 3300
[36] ROA. 4528-4230

[37] ROA. 3283-3287
[38] ROA. 3283-3287
[39] ROA. 4501
[40] ROA. 4511

Plaintiffs' action on September 12, 2023. [41]

## SUMMARY OF THE ARGUMENT

Marquardt relentlessly maintains her Short Term Rental (STR) legal nonconforming use was not lost upon the expiration of the express term of her STR permits, based on her misguided belief that her STR Permit legal nonconforming use of her property continues in perpetuity, but offers nothing to counter the District Court's reliance based on the Fifth Circuit's holding in *Hignell-Stark v. City of New Orleans*, 46 F.4th 317 (5th Cir. 2022) rejecting Hignell Plaintiffs' Takings Clause claim and noting that the City ordinance expressly declared an STR permit is "a privilege, not a right," and stating "plaintiffs thus lacked the sort of ownership in their STR licenses that could support a 'legitimate claim of entitlement' to damages when licenses were not renewed" and the plaintiffs' interest in licenses "were not so longstanding that they can plausibly claim custom had elevated them [STR licenses] to property interests." *Hignell-Stark*, 46 F.4th at 324–25 (quoting *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 270 (5th Cir. 2012) (further citation omitted)). Marquardt further disagrees with the District Court's finding that the duration of her Takings Clause violation damages is only for a few days, but offered no evidence to the Court to support that claim.

---

[41] ROA. 3092

The City submits that whether Marquardt's claim of a purported right to a perpetual nonconforming short term rental permit ("STR") has already been decided. As the Fifth Circuit has recognized, an STR permit is not a property right.[42] That permit holders do not have a property right to STR permits is the settled law of this case. Further, that decision was issued on August 22, 2022, prior to Plaintiff receiving her last STR permit that expired on August 31, 2023. Ultimately, the City chose to codify the holding in *Hignell,* specifically stating that STR permits are privileges and not rights.[43] In fact, this was also recognized by the Plaintiffs in *Hignell.[44]*

The CZO specifically prohibits "grandfathering" or nonconforming use status for previously issued STR permits.[45] Further, the CZO is clear that nonconforming use provisions do not authorize the continued use of any property as an STR if the City chose to limit or prohibit the issuance of a short term rental permit. The City has done just that:

21.8.C.18 SHORT TERM RENTAL, NON-COMMERCIAL

   **a.** A short term rental permit shall be secured prior to operation; and short term rental operators shall comply with all applicable permit requirements provided in the Code of the City of New Orleans. The issuance or renewal of a short term rental permit is a privilege, not a right, and shall be subject to the

---

[42] *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 323-325 (5th Cir. 2022).
[43] City Code Sec. 26-615 (c).
[44] ROA. 3108-3109, 2019-cv-13773-ILRL-JVM
[45] ROA. 4552, Case. No. 23-cv-0500, CZO 21.8.C.18(m)

requirements and limitations, including all restrictions on transfer or assignment, set forth in the City Code, as well as the City's authority to regulate businesses and to regulate, modify, restrict, or altogether prohibit the issuance or renewal of any permit required for short term rental use. **No provision of this ordinance, including without limitations the non-conforming use provisions set forth in Article 25, shall be construed to authorize the continued use of any property as a short term rental in the event the City modifies its short term rental permitting regulations in a manner that limits or prohibits the issuance of a short term rental permit.**

CZO 21.8.C.18 emphasis added

Even if nonconformity was established pursuant to CZO Article 25 which governs nonconformities, there is not a corresponding section of the City Code which would allow for the issuance of a permit under such circumstances.

Contrary to the assertion of Marquardt, the District Court properly applied, *Redfearn v. Creppel* in its analysis. "A use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it *does* not comply with the use restrictions applicable to the area in which it is situated, is commonly referred to as "nonconforming use."' *Redfearn v. Creppel,* 455 So. 2d 1356, 1358 (La. 1984). Under the CZO, if property is used in a manner that was a lawful use before the CZO was enacted or amended but is no longer classified "as either a permitted or conditional use in the zoning district in which it is located, that use is deemed a legal nonconforming use and is controlled by the provisions of Article 25," which pertains to nonconformities. CZO § 1.5.C. However, because

a nonconforming use is inconsistent with the objective of zoning ordinances as it is in this case "it should, consistently with the property rights of the individuals affected and substantial justice, be viewed narrowly and have all doubts resolved against continuation or expansion of the nonconformity." *Redfearn,* 455 So. 2d at 1359. "In all cases, it is the burden of the property owner, through the provision of clear and convincing evidence, to establish the legality of a nonconforming structure, use, lot, or sign under the provisions of this Ordinance." CZO § 25.2.D "Casual, intermittent, temporary, or illegal use of land or structures" is insufficient to establish or maintain a lawful nonconforming use. CZO § 25.3.C(4). As in the case before the court, a STR permit is a privilege, not a right and does not create a continuing nonconforming use beyond the date the permit expires. City Code Sec. 26-615(c).

### STANDARD OF REVIEW

The Court reviews the district court's grant of summary judgment *de novo,* applying the same standards as the district court. *Hagen v. Aetna Ins. Co.,* 808 F.3d 1022, 1026 (5th Cir. 2015). Summary judgment is appropriate if the record evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Robinson v. Orient Marine Co.,* 505 F.3d 364, 366 (5th Cir. 2007); FED. R. CIV. P. 56(a). Unsubstantiated assertions, improbable inferences, and unsupported

speculation are not sufficient to defeat a motion for summary judgment. *See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Reasonable inferences are to be drawn in favor of the non-moving party. *Robinson*, 505 F.3d at 366.

## ARGUMENT

Marquardt's argument is that at the time her residential STR permit was issued in 2017, the City's original zoning scheme, applicable to her permit, promised use of her licensed STR property would continue as a nonconforming use upon a change in the law notwithstanding any other provision in the ordinance. Therefore, the original zoning scheme under the relevant CZO required that the City grant nonconforming use status to her property for the expressed term of the permit. In addition to justifiable reliance upon that CZO, she asserts that the long-standing use of her property for STR purposes since 2017 established that her property interest had vested for Takings Clause purposes. The applicable Zoning Code § 25.2.C, entitled *Authority to Continue*, states:

> **Notwithstanding any other provision in this ordinance**, **any structure, use,** lot, or sign **that existed as a lawful nonconformity at the time of the adoption of this Ordinance**, **and any** structure, use, lot, or sign **that has been made nonconforming because of the terms of this Ordinance or any subsequent amendment may continue to be subject to the provisions of this Article so long as it remains otherwise lawful.** CZO § 25.2.C (emphasis added).

In response, the City argued that it had not taken any enforcement action against Marquardt. [46] Specifically, the City stated: "No action of the City of New Orleans has resulted in the ability of Petitioner [Marquardt] to engage in STR activity pursuant to this Court's Orders of January 9, 2023 and August 31, 2023." [47] The City further maintained that Marquardt's STR permit did not become a nonconforming use because it was excluded under CZO § 25.3.C.4, which states:

> **The casual, intermittent, temporary, or illegal use of land or structures is not sufficient to establish and maintain the existence of any nonconforming use,** whether the use is a main or accessory use. In order to provide for the continuation of any established nonconforming commercial use, the business occupying the land or structure shall be in operation a minimum of four (4) hours per day, five (5) days per week....CZO § 25.3.C.4 (emphasis added).

The City's efforts to address the proliferation of STRs and their impact on residential neighborhoods have been ongoing for almost a decade. Before enacting each of the ordinances at issue, the City received public comment and conducted various hearings. [48] Extensive litigation followed which resulted in rulings on the district and circuit court levels along with various motions, conferences, and hearings with all parties.

---

[46] ROA. 3205
[47] ROA. 3205, ROA. 2351, ROA. 2352-2361, ROA. 3037
[48] ROA. 3266-3270

Pursuant to the Fifth Circuit finding that the City's requirement of a homestead exemption to obtain an STR permit created a Dormant Commerce Clause violation, the District Court directed the parties to consider in good faith certain matters for possible amicable resolution. The parties at that time were only the *Hignell* Plaintiffs and the City. To their credit, the latter parties requested entry of consent judgment which allowed for the continuation of residential transient lodging activity while new ordinances were being drafted and implemented in order to comply with previous rulings by the District Court and the Fifth Circuit. [49]

The District Court approved that request and issued a consent order on January 9, 2023 which specifically directed the City to issue **interim STR permits to** the *Hignell* plaintiffs and "**homeowners who applied for STR permits between December 1, 2019 and August 29, 2022 but were denied permits because the residence for which they sought the permit lacked a homestead exemption.**" [50] **The order also stated the temporary nature of interim STR permits issued pursuant to the order did not create a nonconforming use.** [51] As also requested by the parties, the latter order contained a termination date for such permits: the effective date of the new ordinances at issue. [52]

---

[49] ROA. 2351, 2352-2361
[50] ROA. 2352-2361, at 3 ¶IIA. (emphasis added).
[51] ROA. 2352-2361 at 3–4.
[52] ROA. 2352-2361 at 4.

Marquardt was not an active party to the foregoing events leading to the issuance of the January 9, 2023, consent order. The consent order directed issuance of interim permits to homeowners who applied for STR permits between December 1, 2019 and August 29, 2022 but were denied permits because they lacked a homestead exemption, Marquardt's renewal permit did not constitute an interim permit. As shown earlier, Marquardt applied for permits on December 22, 2022—prior to the noted consent order. In approving her application through issuance of new STR owner/operator permits in January 2023, the permits had expiration dates of January 12, and January 20, 2024. Further, the consent order states that interim permits under the order shall cost no more than $125. Marquardt paid $500—the cost of regular STR permits. She possessed a homestead exemption and, thus, was never denied permits for lack of that exemption. Therefore, Marquardt neither qualified for nor needed a permit issued pursuant to the consent order. [53]

The new STR ordinances set July 1, 2023 as the effective implementation date. [54] In April 2023, the City also set August 31, 2023, as the expiration date for all residential STR permits issued before the effective date of the new STR ordinances, i.e. July 1, 2023, regardless of the expiration date provided on such permit." [55]

---

[53] ROA. 3514-3515
[54] ROA. 2666
[55] ROA.3235 M.C.S. 29398 found at:

The District Court properly relied on Louisiana State law to analyze the creation of a property interest. "The existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (quotation omitted). "Accordingly, we usually treat, as dispositive, the existence—or absence—of a property interest under state law." *Hignell-Stark*, 46 F.4th at 322–23 (first citing *Degan v. Bd. of Trs. of Dallas Police & Fire Pension Sys.,* 956 F.3d 813, 815 (5th Cir.), *cert. denied*, 141 S. Ct. 375 (2020); then citing *Van Houten v. City of Fort Worth*, 827 F.3d 530, 539–40 (5th Cir. 2016); then citing *United States v. 0.073 Acres of Land,* 705 F.3d 540, 544 (5th Cir. 2013) (per curiam)).

As discussed *supra*, Louisiana law instructs that a license, once issued, may create a property interest in the holder that is traditionally protected by due process notions. *See Bell v. Burson*, 402 U.S. 535, 539 (1971); *Montecino v. Louisiana,* 55 F. Supp. 2d 547 (E.D. La. 1999); *see also TXI Operations, LP v. City of Mckinney, Texas*, No. 20-353, 2023 WL 161942 (E.D. Tex. Jan. 11, 2023) (in a somewhat similar context, finding fundamental right to existing permit adversely affected by a rezoning ordinance).

---

https://cityofno.granicus.com/MetaViewer.php?view_id=42&clip_id=4500&meta_id=628438

In consideration of the foregoing, the District Court held the issuance of STR owner/operator permits for Marquardt's property created a property interest protected by due process notions that she had a reasonable expectation of being honored. As such, her property rights also vested at time of issuance of the permits and had nonconforming use status. The District Court found that standing alone, and irrespective of classification as a conforming or nonconforming use of her property, the City's August 28, 2023 directive to Marquardt to cancel bookings after August 31, 2023 was a violation of the Takings Clause.

In evaluating Marquardt's Takings claim, District Court also considered the impact of the August 31, 2023 restraining order and its subsequent conversion into a preliminary injunction the following month. After hearings in open court on August 31, 2023 and September 27, 2023, the District Court enjoined the City from enforcing the newly enacted residential STR ordinances until resolution of cross-motions for summary judgment from all parties. [56] Except for violations of state or local laws not at issue, the orders enjoined the City from "enforcing the short-term rental regulations enacted in Ordinances 29381 M.C.S. and 29382 M.C.S. pending the District Court's decision as to the constitutionality of the above referenced ordinances." [57]

---

[56] ROA.3038-3039
[57] ROA.3037

The District Court noted in its February 28, 2024, opinion that while the City had directed Marquardt on August 28, 2023, to cancel bookings after August 31, 2023, the City had also acknowledged it would honor this Court's August 31, 2023 and September 27, 2023 injunction orders by not taking any action to prevent Marquardt or other STR permit holders from operating. [58] Marquardt was aware of this, since this was acknowledged by the City in the presence of Marquardt's counsel of record, and the District Court stated in open court during oral argument on pending summary judgment motions that the injunction order applied to Marquardt. Thus, she was allowed to operate her STR without being subject to revocation while the summary judgment motions were pending. [59] Based on that, the District Court ruled that the previously found Takings Clause violation was limited to a short duration since the City's August 28, 2023 directive to Marquardt instructing her to cancel bookings ended on August 31, 2023 with the District Court's injunction order.

After becoming a party to this consolidated action on September 12, 2023 [60] Marquardt proposed an order for preliminary injunction on September 13, 2023.[61] Among other matters, a hearing was held on the preliminary injunction on

---

[58] ROA. 3205, ROA 4266-4237 at 10- ll, 15–17, at 47 ll. 21–23. (Transcript of oral argument held November 8, 2023).

[59] ROA. 4266-4237 at 60 ll. 15–19, at 61 ll. 3–5. (Transcript of oral argument held November 8, 2023).

[60] ROA. 3092-3093, 3095-3096

[61] ROA. 3122-3133

September 27, 2023. While citing another judge's denial of Marquardt's motion for a temporary restraining order as the law for that issue, [62] the District Court later clarified that the restraining order had now been extended into a preliminary injunction. [63] The District Court noted that the City correctly acknowledged that it could not enforce any of the new STR ordinances and agreed to continue to abide by the preliminary injunction now.[64] The District Court further noted that the *Hignell* Plaintiffs' counsel also stated during the hearing that by enjoining the City from enforcing the ordinance, Marquardt should contact customer service at Airbnb and its counsel in order to restore her STR listing, assuring that such online platforms are providing such help. [65] The District Court held that based on the record, it was likely that damages for Marquardt should be limited to a period beginning on August 28, 2023 and ending on or about August 31, 2023; reserving any further ruling on that issue for later determination.

Marquardt sought monetary damages and equitable relief for the unlawful taking of her vested property interest, i.e. residential STR permits. Regarding the latter, she argued for an extension of her permits beyond the resolution of instant motions, seeking a permanent reinstatement of her STR license and permit. The

---

[62] ROA 4211-4265 at 52 ll. 20–22, (Transcript of Motion Hearing September 27, 2003)
[63] ROA 4211-426.5 at 54 ll. 1–2. (Transcript of Motion Hearing September 27, 2003)
[64] ROA 4211-4265, 54 ll. 18–24. (Transcript of Motion Hearing September 27, 2003)
[65] ROA 4211-4265, 19 ll. 11–13, at 20 ll. 12–15. (Transcript of Motion Hearing September 27, 2003)

District Court found her request lacking factual and legal foundation and held that even if discretionary authority existed to allow the Court to order such an extension, Marquardt had offered no showing to warrant that extraordinary relief. [66] The District Court held that in order to consider her request for monetary relief, including related attorney fee awards and costs, separate motions must be considered. [67]

**ATTORNEY FEES**

Marquardt filed motions for attorney fees. The issues were briefed by the parties and  oral argument was had. The District Court awarded her motion for attorney fees in part, in the amount of $26,770.30 which is contested by the City in its cross-appeal.

The City asserts that the District Court erred in its analysis in finding that Marquardt was a "prevailing party" under 42 U.S.C. § 1988(b) and therefore entitled to an award of attorney fees, though  she may have had damages arising from bookings that may have been cancel during the time period of August 28 – August 31, 2023, due to a directive from the City, that was soon after enjoined via an order of the District Court and she was allowed to continue operating. The District Court opined that Marquardt had failed to produce facts and evidence to support her claim for damages under the Takings violation beyond a couple of days. The City asserts

---

[66] ROA 3518
[67] ROA 3518

Marquardt's success is, at most, *de minimis*, and the District Court abused its discretion in awarding her claim for attorneys' fees under 42 U.S.C. § 1988(b) as a "prevailing party." *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (stating that if the party succeeds on a "purely technical" or "de minimus" legal question, then the party is not a "prevailing party" for purposes of 42 U.S.C. § 1988(b) attorneys' fees).

The City further asserts that the case was not ripe for an award of attorney fees. A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is **not ripe** if further factual development is required." *Cent. & Sw. Servs. v. E.P.A.,* 220 F.3d 683, 690 (5th Cir.2000). As the District Court observed fact issues regarding the extent of Marquardt's damaged remain to be developed and an award of attorney fees was not in order.

## CONCLUSION

The City agrees with the District Court's finding that Marquardt 's STR permit did not create a property right that bestowed a nonconforming use extending beyond the expiration of her STR permit, based on the Fifth Circuit's holding in *Hignell-Stark v. City of New Orleans*, 46 F.4th 317 (5th Cir. 2022) rejecting plaintiffs' Takings Clause claim and noting that the City ordinance (21.8.C.18 )expressly declared an STR permit is "a privilege, not a right," and stating "plaintiffs thus

lacked the sort of ownership in their STR licenses that could support a 'legitimate claim of entitlement' to damages when licenses were not renewed" and the plaintiffs' interest in licenses "were not so longstanding that they can plausibly claim custom had elevated them [STR licenses] to property interests." *Hignell-Stark*, 46 F.4th at 324–25 (quoting *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 270 (5th Cir. 2012) (further citation omitted)). Pursuant to the CZO and ordinances, Marquardt's legal nonconforming use ended when she did not win the lottery for a STR license and permit.

The City respectfully requests that this Court sustain the District Court's ruling that Marquardt's Taking Violation claim is limited to August 28, - August 31, 2023, and reverse the order of the District Court awarding $26,770.30 in attorney fees since Marquardt's success is *de minimus* to the extent that she is not a prevailing party for purposes of 42 U.S.C. § 1988(b) attorneys' fees.

SUBMITTED BY:

*s/Sherri L. Hutton*
Assistant City Attorney-LSBA 28369
1300 Perdido Street, Room 5e03
New Orleans, Louisiana 70112
Telephone: (504) 658-9800
Email: sherri.hutton@nola.gov
*Appeal Counsel, City of New Orleans*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of F<small>ED</small>. R. A<small>PP</small>. P. 32(a)(7)(B) because, excluding the parts of the document exempted by F<small>ED</small>. R. A<small>PP</small>. P. 32(f), and 5th C<small>IR</small>. R. 32.1:  this document contains 6115 words.

2.  This document complies with the typeface requirements of F<small>ED</small>. R. A<small>PP</small>. P. 32(a)(5), and 5th C<small>IR</small>. R. 32.1 and the type-style requirements of F<small>ED</small>. R. A<small>PP</small>. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 Point Times New Roman font.

*s/Sherri L. Hutton*