No. 24-30802
IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

TINA MARQUARDT
PLAINTIFFS – APPELLANT/CROSS-APPELLEE
v.
CITY OF NEW ORLEANS
DEFENDANT – APPELLEE/CROSS-APPELLANT

_____

ON APPEAL FROM
United States District Court for the Eastern District of Louisiana
USDC No. 2:19-CV-13773
USDC No. 2:23-CV-5000

_____

REPLY BRIEF OF APPELLANT
Tina Marquardt

_____

        Submitted by:

        Edward R. Washington, III
        Counsel for Appellants
        7130 E. Renaissance Court
        New Orleans, Louisiana 70128

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES............................................................................ii

EXHIBITS…………………………………………………………………...…iii

STATEMENT THE ISSUES PRESENTED FOR REVIEW...................................1

SUMMARY OF THE ARGUMENT......................................................................1

ARGUMENT............................................................................................................2

Issue 1: The prevailing party should ordinarily recover attorney fees unless special circumstances would render such an award unjust. On this record, there are no special circumstances provided by the City of New Orleans which would negate recovery of attorney fees…………………………………………..……2

Issue 2: Marquardt maintains that her Short Term Rental legal nonconforming use was not lost upon the expiration of the express term of her STR permits, because her permit was only a privilege and not a right, for the reasons expressed in *Cioffoletti v. Planning and Zoning Com'n of Town of Ridgefield*, 584 A.2d 1200, 24 Conn.App. 5 (Conn. App. 1991)…………………….4

Issue 3: The City's "permits are a privilege and not a right" dogma does not require the surrender Marquardt's Due Process and Takings Clause rights under the Louisiana and United States constitutions…………………………………………………...7

Issue 4: The majority of the City's Response only parrots the *Hignell-Starks* and the District Court's opinions, perhaps with new mischaracterizations, and therefore Marquardt addresses the same out of an abundance of caution.………………………………..12

CONCLUSION…………………………………………………………………...14

CERTIFICATE OF SERVICE . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

(Two additional authorities cited)

*Cioffoletti v. Planning and Zoning Com'n of Town of Ridgefield*, 584 A.2d 1200, 24 Conn.App. 5 (Conn. App. 1991)……………..…………1,4,5,6,7

*Nelson v. Constant*, CIVIL ACTION NO. 17-14581 DIVISION: 1, pp. 3-4 (E.D. La. Jan 08, 2021)……………………………………..………….4

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Issue 1:   Whether there are special circumstances which would render a recovery of attorney fees unjust.

Issue 2:   Whether the District Court's limitation of Marquardt's STR legal nonconforming use to the one year term of her permit should be reversed, because her permit is entitled to full constitutional protections.

Issue 3:   Whether the City's "permits are a privilege and not a right" dogma requires the surrender of Marquardt's Due Process and Takings Clause rights under the Louisiana and United States constitutions.

Issue 4:   Whether the City's parroting and mischaracterizations of the *Hignell-Starks* and the District Court's opinions support the limitation of Marquardt's legal nonconforming use and Takings Claim to the express term of her STR permit.

## SUMMARY OF THE ARGUMENT

Where the City has not shown any special circumstances, Tina Marquardt ("Marquardt") is entitled to attorney fees as the prevailing party. There is no basis or prior court precedent to support the limitation of a legal nonconforming use to the express term of its operating permit. *Cioffoletti v. Planning and Zoning Com'n of Town of Ridgefield*, 584 A.2d 1200, 24 Conn.App. 5 (Conn. App. 1991), perhaps "the" reported case with a fact pattern eighty percent identical to the instant matter, bears out that a legislature and more so a court cannot limit legal nonconforming use to the term of the operating permit. The provisions of the City Code which provide for "permits are a privilege and not a right" does not require the surrender of Marquardt's Due Process and Takings Clause rights under the Louisiana and United

States constitutions. Marquardt brings a Takings Claim of her legal nonconforming use – NOT A TAKINGS CLAIM FOR A PERMIT. The City seems to be determined to mischaracterize Marquardt's claim as a Takings Claim of her permit. The District Court determined that the denial of Marquardt's legal nonconforming use violated the Takings Clause. Lastly, the City cannot legislatively overrule legal nonconforming use in its new 2023 ordinances. It would violate separation of powers. The singling out of STR legal nonconforming use would likely violate equal protection. Moreover, even if the legal nonconforming use prohibition survived constitutionality, the prohibition of legal nonconforming use would only apply prospectively to new STRs and not to Marquardt's STR which pre-existed the 2023 ordinances.

## ARGUMENT

**Issue 1:** **The prevailing party should ordinarily recover attorney fees unless special circumstances would render such an award unjust. On this record, there are no special circumstances provided by the City of New Orleans which would negate recovery of attorney fees.**

Marquardt's action commenced in August 30, 2023, with a request for a temporary restraining order ("TRO") enjoining the City from enforcing 2023 ordinances.[1] The TRO was denied.[2]

---

[1] ROA.4501.
[2] ROA.4551

On August 31, 2023, the District Court granted a TRO, enjoining the City from enforcing the 2023 short term rental ordinances ("2023 STR ordinances") against the *Hignell* plaintiffs,[3] Marquardt, and all persons using their property for short term rental in residential areas.[4] On September 12, 2023, Marquardt's case was consolidated with the *Hignell* case.[5] On September 27, 2023, the TRO was extended by preliminary injunction, and remained in effect until the February 27, 2024 ruling Marquardt now appeals.[6] After extensive briefing, and three in-court hearings, the district court granted in part and denied in part, Marquardt's motion for summary judgment.[7] In particular, Marquardt prevailed as follows:

The District Court found that Marquardt was entitled to a **legal nonconforming use** to use her property as a STR for five additional months, from August 28, 2023, the date the City ordered her to cease operations through January 20, 2024, the expiration date of her operator permit.[8] In addition, the District Court found a **Takings Clause** violation of Marquardt's fundamental right to retain her permits and operate as a legal nonconforming use for the same aforementioned five months.[9] This is much more that a de minimums ruling.

---

[3] *See* ROA.42
[4] ROA.3133.
[5] ROA.3092.
[6] ROA.3466.
[7] ROA.3518-3519.
[8] *Hignell v. City of New Orleans,* 22-2991, 23-5000, Civil Action 19-13773, p.47 (E.D. La. Feb 27, 2024).
[9] *Id.* at 47-48.

"Pursuant to 42 U.S.C. §1988, the court may award a reasonable attorney's fee to prevailing parties in civil rights litigation. Citing the legislative history, the United States Supreme Court has recognized that the prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust. Because Congress believed that the incentive of attorney's fees was critical to the enforcement of the civil rights laws, section *1988 requires an extremely strong showing of special circumstances to justify a denial* of fees."[10]

"Special circumstances under which a court should deny a prevailing plaintiff an attorney's fee, … are few and far between. The First Circuit [for example,] has included among these special circumstances 'outrageous' or 'inexcusable' conduct on the part of the plaintiff or his counsel; 'bad faith or obdurate conduct'; and, 'unjust hardship that a grant or denial of fee shifting might impose."[11]

No part of the City's Appeal Brief "could be read as implying outrageous, inexcusable, bad faith or obdurate conduct."[12]

**Issue 2: Marquardt maintains that her Short Term Rental legal nonconforming use was not lost upon the expiration of the express term of her STR permits by virtue of her permit being only a privilege and not a right, for the reasons expressed in *Cioffoletti v. Planning and Zoning Com'n of Town of Ridgefield*, 584 A.2d 1200, 24 Conn.App. 5 (Conn. App. 1991).**

---

[10] *Nelson v. Constant*, CIVIL ACTION NO. 17-14581 DIVISION: 1, pp. 3-4 (E.D. La. Jan 08, 2021). (Internal citations and quotations omitted)

[11] *Sullivan v. City of Augusta*, 625 F.Supp.2d 28, fn.8 (D. Me. 2009). (Internal citations and quotations omitted)

[12] *Cf. Id.* (Internal citations and quotations omitted)

In reply to the City's new "permit is a privilege and not a right," argument, Tina Marquardt ("Marquardt") contrasts the District Court's Opinion[13] to the almost identical case of *Cioffoletti v. Planning and Zoning Com'n of Town of Ridgefield*, 584 A.2d 1200, 24 Conn.App. 5 (Conn. App. 1991). The only material difference between *Hignell* and *Cioffoletti*, is that in the instant matter, the District Court legislated from the bench in holding that Marquardt's legal nonconforming use was lost upon the expiration of the express term of her permits, whereas in *Cioffoletti*, the actual legislative body, the Ridgefield Planning And Zoning Commission (hereinafter "ZC"), amended its zoning regulations to similarly provide that legal nonconforming use was lost upon the expiration of the term[14] of Cioffoletti's permits.[15]

As did Cioffoletti, Marquardt acknowledges that the City has the authority to regulate STRs and if otherwise proper, the regulation in question, here the City's Zoning Code, is a lawful mechanism to control any such business started after the effective date of the regulation. Just as in *Cioffoletti*, it is a fundamental zoning

---

[13] *Hignell v. City of New Orleans,* 22-2991, 23-5000, Civil Action 19-13773 (E.D. La. Feb 27, 2024).

[14] " "[T]he effect of the regulation is to terminate their nonconforming use at the end of four years when their second possible two year permit would expire." *Cioffoletti* at 1201.

[15] Other technical differences were that the term of the permit in *Hignell* is one year, and the term of the permit in *Cioffoletti* was a maximum of four years. *Hignell* involved a legal nonconforming use and permit for operating an STR, *Cioffoletti* involved a legal nonconforming use and permit for operating a gravel pit excavation.

precept in Louisiana, however, that zoning regulations cannot bar uses that existed when the regulations were adopted.[16] Just as in *Cioffoletti* this restriction is expressly imposed on planning and zoning commissions by the City's own Zoning Code §25.2.C which almost identically dictates that such regulations shall not prohibit the continuance of any nonconforming use existing at the time of the adoption of such regulation.[17] Just as in *Cioffoletti* "[i]t is readily apparent that **the rule concerning the continuance of a nonconforming use protects the right of a user to continue the same use of the property as it existed before the date of the adoption of the zoning regulations.**"[18]

The *Cioffoletti* Court held, the Zoning Commissions attempt to limit the legal nonconforming use for gravel and excavation operations to the four year term of the permit[19] "was illegal because it was an attempt to prohibit the plaintiffs from continuing their established nonconforming use,[20] and that § 306.O.H.'s attempt to

---

[16] "A use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated, is commonly referred to as nonconforming use. The permitted continuation of a nonconforming use is designed to avoid the hardship, injustice and doubtful constitutionality of compelling the immediate removal of objectionable buildings and uses already in the area." *Redfearn v. Creppel*, 455 So.2d 1356, 1358-1359 (La., 1984) (Citations omitted)

[17] *See* **25.2.C Authority to Continue -** Notwithstanding any other provision in this ordinance, … any structure, use, lot, or sign that has been made nonconforming because of ... any subsequent amendment [of the Zoning Ordinance] may continue to be subject to the provisions of this Article so long as it remains otherwise lawful."

[18] *Cioffoletti* citing Helbig v. Zoning Commission, 185 Conn. 294, 306, 440 A.2d 940 (1981). (Emphasis added)

[19] The four year term of the permit was contained in § 306.O.H. of the town's zoning regulations.

[20] *Cf. Id*. at 1201.

limit the gravel and excavating operation to the express term of the permit was illegal as applied to the plaintiffs property because it attempts to prohibit an established nonconforming use."[21]

Consequently, the District Court's almost identical legislation or holding is incorrect under the same learned *Cioffoletti* analysis and reasoning. The District Court's attempt to limit Marquardt's legal nonconforming use for STR operations to the one year term of her permit is incorrect, because it is an attempt to prohibit her from continuing her established nonconforming use.[22] And, the District Court's attempt to limit Marquardt's STR to the express one-year term of her permit is inappropriate as applied to her property because it attempts to prohibit an established nonconforming use – an attempt rejected by the *Cioffoletti*. This holding is entirely consistent with the entire body of zoning law in all fifty states of the United States.

**Issue 3:　The City's "permits are a privilege and not a right" dogma does not require the surrender Marquardt's Due Process and Takings Clause rights under the Louisiana and United States constitutions.**

The City's "permit is a privilege, not a right," dogma has been soundly rejected by the Courts when it involves the use of land and property rights as follows.[23]

---

[21] *Cf. Id*. at 1202. (Internal quotations omitted)
[22] Her legal nonconforming use established by the District Court itself.
[23] Cf. Id. at … 16 (9).

## The Two-Horned Dilemma

The City has apparently forgotten the stern and exhaustive rejection of its "permit is a privilege not a right" dogma by the *Schwegmann Bros. v. Louisiana Bd. of Alcoholic Beverage Control*, 43 So.2d 248, 251 (La. 1949) court.

In *Schwegmann Brothers*, the Louisiana Supreme Court soundly rejected the Louisiana Board of Alcoholic Beverage Control's (hereinafter "the Board") argument that because applicable law provided that the sale of alcohol **was a privilege**, Schwegmanns had no right to challenge the suspension of its liquor license -- the identical argument the City makes here relative to Marquardt's STR license. There, Schwegmanns was required to sell alcohol at a "mandatory minimum mark up over his cost in the sale of the affected beverages."[24] Schwegmanns refused and so the Board suspended his license. The Board argued, as the City does here, that "since plaintiff has no inherent right to engage in the liquor business it cannot attack as being unconstitutional the statute **which grants the privilege**."[25] The Board further argued that Schwegmann had "neither property rights, contract rights, nor vested rights in his license, once obtained"[26] – again, just as the City argues here.

The Louisiana Supreme Court rejected the Board's "permit is a privilege" argument as putting Schwegmanns in a **"two-horned dilemma,"** as follows:

---

[24] *Id* at 250.
[25] *Id.* at 252.
[26] *Id.*

> [A] two-horned dilemma … [is] the **choosing of either horn** of which detriment might result to [Schwegmanns]. Thus, if he refuses to apply for the license, maintaining that certain statutory conditions surrounding its issuance violate his constitutional rights, he may be severely penalized; if, on the other hand, he secures the permit[,] he is denied the right of attacking the constitutionality of the statutory conditions."

In rejecting this "two-horned dilemma," the *Schwegmann Bros.* court held:

> The United States Supreme Court has said specifically that the acceptance of a required statutory license does not impose on the licensee an obligation to respect or to comply with any provisions of the statute that are repugnant to the constitution.[27] And the soundness of this view cannot be denied. The immunization of a law from constitutional attack by the simple expedient of requiring licenses from those in a business sought to be regulated clearly would be inharmonious with our American system of checks and balances.

The right to prohibit, does not confer the right to control unconstitutionally.[28] And, the greater authority does not include the lesser authority absolutely.[29] Consequently, under *Schwegmann Bros.*, analogously, Marquardt's acceptance of STR permits neither requires her to surrender her constitutionally protected legal nonconforming use rights under either *Redfearn v. Creppel*, 455 So.2d 1356 (La., 1984) or under the City's own Zoning Code. The granting of a "privilege" to engage in STR use cannot be made to depend on conditions which violate any and all constitutional

---

[27] Internal citations omitted.
[28] *Cf. Reynolds v. Louisiana Bd. of Alcoholic Beverage Control*, 173 So.2d 57, 64 (La. App. 1965).
[29] *Id.*

guaranties.[30] If such were the law, there could never be an unconstitutional statute dealing with the STRs.[31]

As is the case here, the *Schwegmann Bros.* Court held that

> [E]ven though a state has the authority to grant or deny a **privilege** subject to conditions, which a person is free to accept or reject, its power in that respect is not unlimited. It may not through an abuse of its police power impose conditions which require the relinquishment of constitutional rights. And this limitation applies to the liquor traffic, notwithstanding that the state has the right to suppress it entirely or may, in curbing the attendant evils, impose regulations on it more stringent than on other businesses. **When the liquor traffic is lawful, as it now is, all regulations provided therefor must be pursuant to a legitimate exercise of the state's police power, which includes the respecting of constitutional guaranties.**[32]

In the instant matter, due process protects Marquardt from the abuse of the City's police power imposing conditions which require the relinquishment of her constitutional rights,[33] and **the "constitutional guaranties" of nonconforming use and procedural due process must be respected.**

It should be noted that in *Schwegmann Bros.*, it was generally acknowledged that the government had enhanced power to more strictly regulate the sale of alcohol because of the "utmost evils associated" with the sale of alcohol. Here, we are dealing with the benign use of STRs which warrants less strict regulation and **more due process rights.**

---

[30] *Cf. Id.* at 61.
[31] *Cf. Id.*
[32] *Id.* at 254. (Emphasis added)
[33] *Cf. Id.*

Appellant recognizes that *Schwegmann Bros.* is fairly "long in the tooth," so she provides the holding in the more recent, and equally applicable *Tenneco Oil Co. v. Board of Com'rs for Lake Borgne Basin Levee Dist.*, 567 So.2d 113 (La. App. 1990) through which *Schwegmann Bros.* lives on, as follows:

> In 1926 the United States Supreme Court addressed the basic issue of a state imposing conditions on the granting of a permit. In *Frost v. Railroad Commission of State of California*, 271 U.S. 583, 593-594, 46 S.Ct. 605, 607, 70 L.Ed. 1101 (1926), the Court stated:
>
> "It is not necessary to challenge the proposition that, as a general rule, the state, having the power to deny a privilege altogether, may grant upon it such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited, and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guarantees imbedded in the Constitution of the United States may thus be manipulated out of existence."

In summary, it is the well-established jurisprudence of the Louisiana courts as well as the United States Supreme that the City's use of semantics to characterize Appellant's permits as a privilege and not a right did not require the surrender of her Due Process and Takings Clause rights under the Louisiana and United States constitutions. Therefore, where ordinances 29381, 29382, and 29383 revoked Appellant's STR permits in violation of her procedural due process rights, those

actions and ordinances are invalid, null, void and unconstitutional under *Schwegmann Bros.* and its progeny.

In addition, *Hignell-Starks* the "permit is a privilege, not a right," argument addressed materially different facts, because *Hignell-Starks,* and the *Melancon*[34] cased upon which it was predicated, did not involve the use of immovable property. These cases only addressed a permit. *Hignell-Starks* addressed a permit without regard to the underlying legal nonconforming use property rights, and *Melancon* addressed the right to operate a taxi on City-owned streets – both cases adjudicating the entitlement to a permit separate and apart from the right to use land and/or legal nonconforming use.

The instant matter is distinguishable and different. Therefore, *Hignell-Starks* and its "permit is a privilege, not a right" dogma are clearly misplaced and do not apply here. The caselaw holds that when the permit is connected to the use of immovable property, land, or real estate, as was the case in *Schwegmann Bros.*, *Tenneco Oil*, and the instant matter, the full protections of U.S. Constitution applies including legal nonconforming use – as thoroughly discussed in Appellants Brief.

**Issue 4:   The majority of the City's Response only parrots the *Hignell-Starks* and the District Court's opinions, perhaps with new mischaracterizations, and therefore Marquardt addresses the same out of an abundance of caution.**

---

[34] *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 270 (5th Cir. 2012).

The "Takings Claim" in *Hignell-Starks* solely involved the takings of a permit. A piece of paper or placard. A permit which only served to document compliance with the operational and life safety codes as a prerequisite for operating an STR under the Zoning Code. Marquardt made a Takings Claim not for the taking of a permit, but for the takings of her legal nonconforming use. Indeed, the District Court sustained Marquardt's takings claim of her legal nonconforming use of her STR. Therefore, Marquardt adequately countered or differentiated the holding in *Hignell-Starks* from the instant matter which the City either still fails to comprehend, or is in denial of.

Marquardt does not claim a stand-alone property interest in STR licenses. Marquardt claims a property interest in her legal nonconforming use for STR use – which the District Court found she was entitled to.

As the District Court ruled, Marquardt already has a legitimate claim of entitlement' to damages. If this Court finds that legal nonconforming use is not limited by the express duration of her permit, Marquardt's damages will be retroactive from the date the District Court denied her legal nonconforming use, February 28. 2024, until the date the City issues her a permit pursuant to this Court's reversal of the District Court.

The 2023 Ordinances attempts to prevent STRs from grandfathering by carving out a prohibition of legal nonconforming use for STRs, only. Marquardt

points out that first, legal nonconforming use is constitutional. The City cannot legislatively overrule the Louisiana Supreme Court's declaration that legal nonconforming use is a constitutionally protected property right under *Redfearn, supra*. It is hornbook law and needs no citation that such legislative overruling by mere ordinance of the courts' interpretation of the constitution would violate the courts' plenary power to interpret what the Constitution says and means, and it would constitute a fundamental violation separation of powers that even a pre-law student could recognize.

Second, this grandfathering prohibition provision is new and was added by the March 2023 ordinances. Nothing in the new 2023 ordinances evinces an intention to apply the questionable grandfathering prohibition retroactively. Even if there was retroactive language, it would be illegal for the grandfathering prohibition to affect already vested property rights Marquardt has in her permits and legal nonconforming use. So even if the legal nonconforming use prohibition were legal, it could only apply prospectively to new STR's which began operation after the 2023 ordinances and not to Marquardt's STR which pre-existed the enactment of the 2023 ordinances.

Lastly, carving out STRs from legal nonconforming use while allowing it nonconforming use for all other uses of property would likely violate the Equal Protection clause of the Louisiana and United States constitutions.

## CONCLUSION

The bottom line is that the City's response is badly argued, misplaced, confused, and mis-characterizes the *Hignell-Stark* and the District Court's opinions. Marquardt has a legal nonconforming use for STR that is not limited by the term of her permit.

For the foregoing reasons, Appellee's Appeal of the attorney fee award should be denied. Appellants Takings Clause claim and legal nonconforming use is not limited by the express term of her operating permits.

SUBMITTED BY:

/s/Edward R. Washington, III  
Counsel for Appellant  
7130 East Renaissance Court  
New Orleans, LA 70128

## CERTIFICATE OF SERVICE

I certify that on June 7, 2025, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

**Donesia Turner**
**Corwin St. Raymond**
**Sherri Hutton**
**Attorneys for the City of New Orleans**

/s/Edward R. Washington, III

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1 this document contains 3585 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using WordPerfect in 14 point Times New Roman font.

/s/Edward R. Washington, III